## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: CHOWNS FABRICATION AND : Chapter 11
      RIGGING, INC. :
      Debtor. : Bankr. No. 18-14529-mdc
       :
       :

### EXPEDITED MOTION OF DEBTOR
### FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT
### TO 11 U.S.C. §§ 105, 361, 362, AND 363 AND FEDERAL RULES OF BANKRUPTCY
### PROCEDURE 4001 AND 6004 (I) AUTHORIZING DEBTOR TO USE CASH
### COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III)
### SCHEDULING A FINAL HEARING

**TO THE HONORABLE BANKRUPTCY COURT JUDGE:**

DEBTOR Chowns Fabrication and Rigging, Inc. ("Chowns" or "Debtor") brings this motion (the "Motion"), for the entry of interim and final orders pursuant to sections 105, 361, 362, and 363 of Title 11 of the United States Code, (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of this Court (the "Local Rules") authorizing Debtor to use cash collateral ("Cash Collateral"), granting adequate protection, and scheduling a further and final hearing on the Motion. In support of the Motion, Debtor respectfully states as follows:

### Jurisdiction and Venue

1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (0).

2.    Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.c. § § 1408 and 1409.

3.    The statutory predicates for the relief sought herein are sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

1

## Background

4. On June 21, 2018 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

5. The Debtor is a Pennsylvania corporation headquartered at 2053 Cressman Rd, Skippack, PA 19474, which is in the business of steel fabrication and rigging.

6. Debtor has sought bankruptcy protection to reorganize its business and restructure their secured and unsecured debts.

7. Debtor continues to operate their business and manage their property as a Debtor in Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtor's case.

## Basis for Expedited Consideration

9. Debtor is entitled to expedited consideration for the relief requested in this Motion for the following reasons:

A. Debtor buys and sells inventory on a daily basis, and such business requires the constant flow of cash on a daily basis each and every week to operate and not default on their ongoing obligations;

B. If Debtor is unable to access its cash collateral, it will be unable to operate.

C. An expedited date for a hearing seeking permission to use cash collateral is necessary because Debtor needs immediate access to cash flow and could not wait for a regularly assigned court date which may be more than 15 days away.

8. It is essential to the continued operation of Debtor's business that it obtain the use of cash collateral in order to continue ordinary course day-to-day operations. Debtor is convinced that without immediate use of cash collateral, it lacks sufficient liquidity to maintain

2

its operations. Accordingly, without a grant of the relief requested herein, Debtor risks immediate and irreparable harm to its business.

### Debtor's Debt Structure

9. Debtor's principal secured lender is Univest Bank ("Univest"), which has a credit facility in the aggregate amount of approximately $1.5 Million in place with Debtor. Univest asserts that this credit facility is currently in default.

10. Univest's security interest on the credit facility is evidenced by various UCC Secured Claim filings with PA Department of State.

11. Univest avers that amounts outstanding under the above credit facility are secured by security interests on all business assets of Debtor.

12. As shown by the attached budget (Exhibit "A" hereto) Debtor is expected to generate sufficient cash flow from operations to adequately service certain obligations post-petition and to make an adequate protection payment to Univest in the amount of $5,000.00 per month, as set forth on the budget.

### Relief Requested

13. By and through this Motion, Debtor seeks the entry of interim and final orders pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, and Bankruptcy Rule 4001:

   a. granting and authorizing Debtor to use cash collateral on an interim basis in accordance with the budget (the "Budget") attached hereto as Exhibit "A" and pursuant to the terms and conditions contained and described in the proposed Interim Order, a copy of which is attached hereto as Exhibit "B";

   b. approving the form and manner of service of notice of this Motion;

c. scheduling a final hearing to consider entry of a Final Order granting and authorizing Debtor to use cash collateral in accordance with and for the time period set forth in the Budget (the "Final Hearing");

d. approving the form and manner of notice of the Final Hearing; and granting adequate protection.

## Basis for Relief Requested

14. Section 363 of the Bankruptcy Code governs a debtor's use of cash collateral and provides in pertinent part:

> (1) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title. * * *
> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless:
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section
> (3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The Court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.
> See 11 U.S.C. § 363(a) and (b).

15. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 15 days after service of such a motion. Bankruptcy Rule 4001 (b) also provides the bankruptcy court, upon request, with the authority to

4

conduct a preliminary hearing on the motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to the debtor.

16. Approval of Debtor's authority to use Cash Collateral on a 60-day interim basis pending the Final Hearing is necessary to provide Debtor's immediate use of funds, which will allow Debtor to pay essential operating costs and capital expenditures. Debtor's immediate cash needs, for which it seeks authorization, arise by virtue of its need to pay post-petition obligations critical to the continued operations of its business, such as rent, utilities, taxes, certifications, maintenance, insurance and cash purchase of food and beverage, compensation to entertainment and other vital expenses.

17. The Budget for Debtor, which is attached hereto as Exhibit "A," provides for payments of necessary expenses and capital expenditures. The Budget does not contemplate any additional borrowings to meet the 60-day interim Cash Collateral request, and the amounts set forth in the Budget are reasonably anticipated to be sufficient to cover all anticipated administrative expenses that may accrue during the Interim Cash Collateral Period (as defined below).

18. Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its businesses in Chapter 11. Debtor requires immediate authority to use Cash Collateral to continue business operations without interruption toward the objective of formulating an effective plan of reorganization. Debtor's interim use of Cash Collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estate, pending a final hearing.

19. The amount of Cash Collateral authorized to be used pending a final hearing or entry of a final order will not exceed by more than ten percent (10%) each line item set forth in

the Budget (the "Interim Cash Collateral Amount"), for the time period from the Petition Date through August 21, 2018, (the "Interim Cash Collateral Period").

20. Debtor may expend amounts up to a variance of ten percent (10%) as to any line item of the Budget, provided the aggregate expenditures do not exceed one hundred ten percent (110%) of the aggregate budgeted expenditures for any calendar month. To the extent that Debtor does not expend the entire amount set forth in the Cash Collateral Budget for any particular line item expense during any particular time period in the Budget, the unused funds may be used by Debtor to satisfy any "shortfall" in any line item in the Budget for any time period, provided the aggregate expenditures do not exceed one hundred ten percent (110%) of the aggregate budgeted expenditures for the entire period of time during which Debtor is authorized to use Cash Collateral.

21. Absent the authority to use Cash Collateral, Debtor will be unable to pay for the services that are essential to the maintenance of its property and operations and the preservation of the collateral. In contrast, the authority to use cash collateral will provide Debtor with liquidity to manage its business while Debtor attempts to reorganize or present an orderly liquidation. Accordingly, the use of cash collateral is crucial, and Debtor requests the authority to use cash collateral in accordance with the terms of the Interim Order.

### Adequate Protection

22. Under section 363(c)(2) of the Bankruptcy Code, "The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless . . . (B) the court, after notice and a hearing, authorizes such use, sale, or lease. . ." The use of a secured creditor's cash collateral is conditioned upon the provision of adequate protection by the Debtor.

23. The purpose of providing adequate protection is to protect the value of the creditor's interest in collateral from diminution during the course of the proceedings while the debtor is using the secured creditor's property. *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D.Col. 1995). *See also In re Cann & Saul Steel Co.*, 76 B.R. 479 (Bankr. E.D. Pa. 1987); and *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate Protection is designed to preserve the secured creditor's position at the time of the bankruptcy.")

24. The creditor is only entitled to protection of the value of the collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *Id.* at 584-85, citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 365 (1988).

25. Section 361 of the Bankruptcy Code provides three nonexclusive methods of providing adequate protection of an entity's interest in property, specifically, (i) cash payments, (ii) replacement liens, or (iii) other methods that will result in the realization of the indubitable equivalent of an entity's interest in the property. See 11 U.S.C. § 361. This section is written in the disjunctive, and any one form of adequate protection may suffice. *In re Swedeland Dev. Group*, 16 F.3d 552 (3rd Cir. 1994) (definition of adequate protection is not expressly defined by the Bankruptcy Code and is to be determined on a case-by-case basis.). Any one of these forms of adequate protection alone is sufficient to adequately protect a secured creditor's interest.

26. Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *In re Dunes Casino Hotel, supra*, 69 B.R. at 793. Here, it is apparent that the Secured Parties will suffer no such diminution of collateral.

27. Debtor proposes that Secured Parties receive post-petition replacement liens to the same extent, validity, priority, and nature as its pre-petition liens, to the extent that it is ultimately determined to hold valid liens on the Debtor's assets. Therefore, the Secured Parties will suffer no diminution in value, and use of cash collateral is appropriate.

28. Debtor attaches hereto a proposed order as Exhibit "B", which is submitted for the Court's approval.

### Notice With Respect To Final Order

29. Pursuant to Bankruptcy Rule 4001, Debtor respectfully requests that it be authorized to provide notice of the Final Hearing on this Motion by serving a copy of the Motion (to the extent not previously served), together with the Interim Order, in accordance with the terms thereof.

### Notice

30. Debtor has provided notice of the Motion to (i) the Office of the United States Trustee, (ii) twenty (20) largest unsecured creditors, (iii) Secured Parties, and (iv) all other persons and entities that have requested notice pursuant to Bankruptcy Rule 2002.

31. Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" to mean "after such notice as is appropriate in the particular circumstances." Debtor believes notice of the Motion satisfies this requirement and no further notice is required.

WHEREFORE, Debtor respectfully requests that this Court enter an Order, substantially in the form of Exhibit "B" hereto:

    i. granting and approving the Motion;

    ii. granting and authorizing Debtor to use cash collateral on a sixty (60) day interim basis in accordance with the Budget attached hereto as Exhibit "A", and

Case 18-14529-mdc    Doc 10    Filed 07/12/18    Entered 07/12/18 11:23:20    Desc Main
                            Document          Page 9 of 10

pursuant to the terms and conditions contained and described in the proposed Interim Order attached hereto.

    iii.  approving the form and manner of service of notice of this Motion;

    iv.  scheduling a final hearing to consider entry of a Final Order granting and authorizing the Debtor to use cash collateral on permanent basis in accordance with and for the time period set forth in the Budget;

    v.  approving the form and manner of notice of the Final Hearing;

    vi.  granting such other relief as the Court deems proper and just.

Date: July 11th, 2018

ALLEN B. DUBROFF, ESQ. & ASSOCIATES, LLC
BY:/s/ *Allen B. Dubroff, Esq. (04686)*
Allen B. Dubroff, Esquire
(Attorney Id #04686)
1500 JFK Boulevard, Suite 1030
Philadelphia, PA 19102
Phone: (215)568-2700
Fax: (215)689-3777
Attorney for Debtor

**Chowns Fabrication & Rigging Inc.**
**Cash Flow Statement**
**90 Day Period**

|  | 0-30 | 31-60 | 61-90 | TOTAL |
|---|---|---|---|---|
| **Beg'g Cash** | $ 173,494 | $ 593 | $ 4,669 | $ 173,494 |
| Cash Received | $ 339,000 | $ 1,000,000 | $ 825,000 | $ 2,164,000 |
| **Direct Expenses:** | | | | |
| Material costs | 33,096 | 650,000 | 450,000 | 1,133,096 |
| Subcontractors | 60,000 | 25,000 | 25,000 | 110,000 |
| Engineering | 20,000 | 50,000 | 50,000 | 120,000 |
| Wages | 167,909 | 166,667 | 166,666 | 501,242 |
| Prevailing Wage Account | 6,666 | 6,667 | 6,667 | 20,000 |
| Taxes - Payroll | 132,000 | 30,000 | 30,000 | 192,000 |
|  | 306,575 | 203,334 | 203,333 | 713,242 |
| **Indirect Expenses:** | | | | |
| Insurance GL | 9,137 | 9,138 | 20,000 | 38,275 |
| Insurance HI | 10,000 | 10,000 | 10,000 | 30,000 |
| Insurance WC | 8,333 | 8,334 | 23,333 | 40,000 |
| Fuel | 1,333 | 1,333 | 1,334 | 4,000 |
| Vehicle | 3,154 | 2,833 | 2,833 | 8,820 |
| Other | 3,333 | 1,334 | 4,333 | 9,000 |
| Repairs/Maint | 2,219 | 1,667 | 4,166 | 8,052 |
| Supplies | 8,546 | 5,000 | 5,000 | 18,546 |
| PA Sales Tax | 200 | 200 | 200 | 600 |
| EZ Pass | 333 | 334 | 333 | 1,000 |
|  | 46,588 | 40,173 | 71,532 | 158,293 |
| **Other:** | | | | |
| Utilities | 1,334 | 1,333 | 1,333 | 4,000 |
| Telephone | 1,250 | 1,250 | 1,250 | 3,750 |
| Office | 4,058 | 3,334 | 5,333 | 12,725 |
| Professional Fees | 22,500 | 5,000 | 5,000 | 32,500 |
| Rent | 11,500 | 11,500 | 11,500 | 34,500 |
| **Misc:** | | | | |
| Univest Bank | 5,000 | 5,000 | 5,000 | 15,000 |
|  | 45,642 | 27,417 | 29,416 | 102,475 |
| Net cash flow | $ 593 | $ 4,669 | $ 388 | $ (173,106) |
| **End'g Cash** | $ 593 | $ 4,669 | $ 388 | $ 388 |



Exhibit "A"